UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| THOMAS JAMAR BROWN | CIVIL ACTION NO. 11-1260 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| CITY OF SHREVEPORT, ET AL. | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before the Court are Defendants Chief Willie Shaw ("Chief Shaw"), Officer Roland Garner ("Officer Garner"), and the City of Shreveport's ("the City") Motions for Summary Judgment (Record Documents 56 and 57) under Rule 56 of the Federal Rules of Civil Procedure seeking dismissal of all of Plaintiff Thomas Jamar Brown's ("Brown") claims. For the reasons stated in the instant Memorandum Ruling, Defendants' Motions for Summary Judgment are hereby **GRANTED**.

### FACTUAL AND PROCEDURAL BACKGROUND

Brown's allegations in the instant lawsuit revolve around his arrest for public drunkenness and resisting arrest in the early morning hours of July 1, 2010. See Record Document 28 at 3. Brown alleges that at approximately 3:00 AM on July 1, 2010, he was walking with his fiancée Alicia Figueroa ("Figueroa") in the 200 block of Crockett Street in downtown Shreveport. See id. Suddenly, an unknown officer "blind side pushed" him while he was walking. See id. Brown then asked why he was pushed; Officer Garner with the Shreveport Police Department (SPD), known to Brown because of Officer Garner's position as the "courtesy officer" at Brown's apartment complex, then allegedly responded by telling Brown to "just go home man." Id. Brown alleges that he then proceeded home, but was wrongfully arrested a block away. See id. Officers then placed Brown in what Brown believed to be Officer Garner's patrol car. See id. Brown

alleges that no one ever read him his rights or informed him of the crime for which he was being arrested. See id.

Brown fell asleep in the car, but alleges that he was later awoken by being repeatedly punched in the face and tased until he lost consciousness. See id. He then awoke to discover that he was covered in blood and had been severely beaten on the face, head, arms, and legs. See id. Brown alleges that the SPD washed his clothes and returned them to him when he was released from the Shreveport City Jail "in an apparent attempt to remove blood stains from clothing." Id. at 4.

Brown filed the instant action on July 1, 2011. See Record Document 1. On August 3, 2012, the Clerk sent a notice to Brown stating the intention to dismiss the case for failure to effect service of process within 120 days of filing suit. See Record Document 8. On April 4, 2013, the Clerk of Court dismissed the case. See Record Document 9. On April 3, 2014, Brown file a *pro se* Motion to Reopen/Reinstate the case, explaining that he had attempted to contact the attorney who had originally represented him in the instant action but had been unable to contact him for some time; he also explained that he recently discovered that his attorney had passed away. See Record Document 10. The Court granted the Motion to Reopen/Reinstate the case. See Record Document 11.

Brown eventually filed an Amended Complaint on March 10, 2015. See Record Document 28. The Amended Complaint alleges (1) 42 U.S.C. § 1983 causes of action for violations of the Fourth, Fifth, Sixth, Ninth, and Fourteenth Amendments to the United States Constitution and Title VII of the Civil Rights Act of 1964 against all Defendants; (2) a conspiracy to deprive Brown of his federal civil rights under these

laws; (3) state law causes of action for violations Article I, §§ 2, 3, 4, and 13 of the Louisiana Constitution; and (4) a conspiracy to deprive Brown of his civil rights under these state constitutional provisions. See id. as 4-5. On March 11, 2016, Defendants filed the instant Motions for Summary Judgment. See Record Documents 56 and 57. Brown filed a Memorandum in Opposition, and Defendants filed Reply briefs. See Record Documents 61, 66, and 67.

## LAW AND ANALYSIS

I.  **Legal Standards**

   A. **The Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment. This rule provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Also, "a party asserting that a fact cannot be or is genuinely disputed must support the motion by citing to particular parts of materials in the record." Fed R. Civ. P. 56(c)(1)(A). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment." Fed. R. Civ. P. 56(e)(3).

In a summary judgment motion, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings . . . [and] affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations and citations omitted). If the

movant meets this initial burden, then the non-movant has the burden of going beyond the pleadings and designating specific facts that prove that a genuine issue of material fact exists. See id. at 325; see Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). A non-movant, however, cannot meet the burden of proving that a genuine issue of material fact exists by providing only "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Little, 37 F.3d at 1075. Additionally, in deciding a summary judgment motion, courts "resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is when both parties have submitted evidence of contradictory facts." Id. Courts "do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Id.

Rule 56 states that "a party asserting that a fact . . . is genuinely disputed must support the assertion by citing to particular materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials." Once the party seeking to establish that there is a genuine dispute as to a material fact has cited to such materials, the opposing party "may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56. "At the summary judgment stage, materials cited to support or dispute a fact need only be *capable* of being presented in a form that would be admissible in evidence." LSR Consulting, LLC v. Wells Fargo Bank, N.A., 835 F.3d 530, 534 (5th Cir. 2016) (emphasis in original). However, once a party has challenged the admissibility of the evidence relied upon to demonstrate a genuine dispute of material fact, the

proponent of that evidence must show that the evidence is capable of being presented in a form that would be admissible in evidence. See id.

Under the Local Rules of the Western District of Louisiana, a party seeking summary judgment must file "a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1. Then, the party opposing summary judgment must file "a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried." Local Rule 56.2. "All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for the purposes of the motion, unless controverted as required by this rule." Id.

### B. Qualified Immunity in 42 U.S.C. § 1983 Claims

Section 1983 authorizes the assertion of a claim for relief against a person who, acting under the color of state law, allegedly violated the claimant's rights under federal law. See 42 U.S.C. § 1983. Section 1983 actions are often brought against persons acting under the color of state law in their individual capacity, but these persons are often protected from liability by qualified immunity. "The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation." Ashcroft v. Iqbal, 556 U.S. 662, 685 (2009) (internal quotations and citations omitted). In fact, a qualified immunity defense is truly "an immunity from suit rather than a mere defense to liability." Pearson v. Callahan, 555 U.S. 223, 231 (2009).

Once the defendant raises a qualified immunity defense, the plaintiff carries the burden of demonstrating the inapplicability of qualified immunity. See Floyd v. City of Kenner, 351 Fed. Appx. 890, 893 (5th Cir. 2009). First, the court must determine

whether the plaintiff demonstrated a genuine dispute of material fact as to a violation of a constitutional right. See Pearson, 555 U.S. at 232. Second, the court must determine whether the constitutional right at issue was "clearly established" at the time of the defendant's alleged misconduct. Id. A defendant who can validly raise a qualified immunity defense will enjoy its protection so long as the allegedly violated constitutional right was not clearly established at the time of the violation. See id. In other words, the defendant can only be held liable if he violates a right that is clearly established at the time of the violation.

Additionally, when the plaintiff seeks to impose supervisory liability on a defendant public official in his individual capacity, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Estate of Davis v. City of N. Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005). Thus, in a supervisory liability case, a plaintiff must demonstrate a genuine dispute of material fact as to each of these elements once the defendant has asserted a qualified immunity defense to survive a motion for summary judgment.

### C. Section 1983/ Monell Claims against Local Governments

In addition to suits against persons acting under the color of state law in their individual capacities, Section 1983 also allows for suits against local government entities themselves. A suit against a state or municipal officer in his or her official capacity is treated as a suit against the entity itself. See Kentucky v. Graham, 473 U.S. 159, 166 (1985). In Monell v. Dept. of Social Serv., 436 U.S. 658 (1978), the Supreme

Court held that municipalities and local government agencies cannot be held liable for constitutional torts under Section 1983 under a theory of respondeat superior, id., 436 U.S. at 691, but they can be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id., 436 U.S. at 694. In other words, merely establishing a constitutional violation by an employee of a local government entity is not enough to impose liability upon that entity under Section 1983.

Rather, to succeed on a Monell claim against a local government entity, the plaintiff must establish (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. McGregory v. City of Jackson, 335 Fed. Appx. 446, 448 (5th Cir. 2009), citing Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 247-49 (5th Cir. 2003). Locating an official "policy" or "custom" ensures that a local government entity will be held liable only for violations of constitutional rights that resulted from the decisions of those officials whose acts may fairly be said to be those of the government entity itself. Bryan Cty. Comm'rs v. Brown, 520 U.S. 397, 403-04 (1997).

An "official policy" may be established in one of three ways: (1) "when the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy," Id., 520 U.S. at 417 (Souter, J., dissenting); (2) "where no rule has been announced as 'policy' but federal law has been violated by an act of the policymaker itself," Id., 520 U.S. at 417-18 (Souter, J., dissenting); and (3) "even where the policymaker has failed to act

affirmatively at all, so long as the need to take some action to control the agents of the government 'is so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymaker . . . can reasonably be said to have been deliberately indifferent to the need.'" Id. 520 U.S. at 419 (Souter, J., dissenting) (quoting City of Canton v. Harris, 489 U.S. 378, 390 (1989)).

### D. Wrongful Arrest Claims

In Heck v. Humphrey, the Supreme Court held that "to recover damages for allegedly unconstitutional conviction or imprisonment . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed . . . expunged . . . declared invalid . . . or called into question." 512 U.S. 477, 486-87 (1994). In a § 1983 suit by a plaintiff who has been convicted of a crime, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. Louisiana follows the Heck rule for wrongful arrest claims under state law. See Restrepo v. Fortunato, 556 So.2d 1362, 1363 (La. App. 5 Cir. 1990); see Bates v. McKenna, 2012 U.S. Dist. LEXIS 113931, at *18-19 (W.D. La. 2012).

### E. Qualified Immunity under Louisiana State Law

In Moresi v. State, the Supreme Court of Louisiana explained that though the Louisiana Constitution creates a private right of action against those who violate rights secured thereunder, those who act under color of state law in doing so are entitled to the protection of qualified immunity from liability for violations of the Louisiana Constitution. 567 So.2d 1081, 1091-95 (La. 09/06/1990). In so holding, the Court

applied the same standard as federal law for deciding whether a person's actions are protected by qualified immunity. See id. at 1094.

## II. Analysis

### A. Brown's Response to Defendants' Summary Judgment is Defective.

The Court's order granting Brown's request for an extension of time to respond (Record Document 60) set April 18, 2016, as the deadline for filing a Response to Defendants' Motions for Summary Judgment. On that day, Brown filed a five-page Response to Defendants' Summary Judgment that included nineteen pages of exhibits. See Record Documents 61 and 61-1. On April 20, 2016, Brown filed two affidavits, one by him and one by Figueroa. See Record Documents 62 and 63.

#### i. Defendants' Objections to Brown's April 20, 2016 Affidavits

Chief Shaw and the City objected to consideration of the affidavits in deciding the Motions for Summary Judgment because they were untimely. See Record Documents 66 at 2 and 67 at 8. The affidavits Brown filed on April 20, 2016 were untimely. Local Rule 7.5 of the Local Rules of the Western District of Louisiana states that "if respondent opposes a motion, he or she shall file a response, including opposing affidavits . . . within 21 days after service of the motion," though the Rule also gives judges discretion to shorten or lengthen the time period in which a party must file such a response and supporting documents. The Court granted Brown's request for an extension of time to file a Response to the Motions for Summary Judgment, but Brown nonetheless filed the two affidavits two days after the extended deadline. See Record Documents 60, 62, and 63. To date Brown has not sought leave to file these untimely affidavits or attempted to explain the reason for their late submission in any way. See

Record Documents 66 and 67. As such, the Court will not consider the affidavits in deciding the instant Motions for Summary Judgment.

  **ii. Defendants' Objections to the Exhibits Attached to Brown's April 18, 2016, Response to the Motions for Summary Judgment**

Chief Shaw and the City objected to all but one of the exhibits attached to Brown's Response to the Motions for Summary Judgment as inadmissible hearsay and on authentication grounds. See Record Document 66 at 2. Officer Garner objected to two of the exhibits on the ground that they are irrelevant and are inadmissible character evidence. See Record Document 67 at 1. Officer Garner also objected to another of the exhibits on the grounds that it is hearsay and has not been properly authenticated. See id. Finally, Officer Garner adopted by reference all of Chief Shaw and the City's arguments for disregarding Brown's attachments. See id. at 3. Brown did not respond to these objections to his summary judgment evidence.

  Defendants' objections are objections that "the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Defendants assert that Brown's exhibits would not be admissible at trial on a number of specific grounds, including citations to Federal Rules of Evidence 401-404, 802-803, and 901-902. See Record Documents 66 and 67. "At the summary judgment stage, materials cited to support or dispute a fact need only be *capable* of being presented in a form that would be admissible in evidence." LSR Consulting, LLC, 835 F.3d at 534. The Advisory Committee's Note to the 2010 amendment to Rule 56 explains that an objection to a party's summary judgment evidence under Fed. R. Civ. P. 56(c)(2) shifts the burden to the party that submitted the evidence "to show that the material is admissible as presented or to explain the admissible form that is anticipated."

A party must be afforded enough time to respond to the objections, see Rodriguez v. Vill. Green Realty, Inc., 788 F.3d 31, 46-47 (2nd Cir. 2015), but the failure to show that the evidence in question is admissible as presented or in another form permits the Court to disregard the evidence in deciding the motion for summary judgment. See Target Corp. v. All Jersey Janitorial Serv., 916 F. Supp. 2d 909, 914-15 (D. Minn. 2013) (disregarding a defendant's summary judgment evidence after the defendant failed to respond to the evidentiary objections of the plaintiff to that evidence). Brown has had ample time to respond to the Defendants' evidentiary objections in the instant action, as Defendants filed their Reply briefs on May 9, 2016. See Record Documents 66 and 67. The Court will therefore disregard all of Brown's exhibits except for (1) Officer Garner's handwritten police report (Record Document 61-1 at 1), which Officer Garner included as an attachment to his own Motion for Summary Judgment, and (2) Brown's "Declaration that Documents Were Requested" (Record Document 61-1 at 8-9), to which the Defendants did not object.

### B. Brown's Federal Claims Against Officer Garner and Chief Shaw Individually

Both Officer Garner and Chief Shaw asserted the defense of qualified immunity in their Motions for Summary Judgment. See Record Documents 56 and 57. Therefore, the Court must consider whether qualified immunity protects them from liability.

#### i. Brown Failed to Overcome Officer Garner's Qualified Immunity Defense.

The first question in deciding whether a defendant is entitled to qualified immunity at the summary judgment stage is to determine whether the plaintiff demonstrated a genuine dispute of material fact as to a violation of a constitutional right.

See Pearson, 555 U.S. at 232. Here, Officer Garner's Motion for Summary Judgment includes Officer Garner's affidavit regarding the events of July 1, 2010. See Record Document 57-2. In this affidavit, Officer Garner admits to participating in the arrest of Brown and preparing an arrest report for the arrest. See id. However, he denies (1) that he and his fellow officers placed Brown in Officer Garner's police car; (2) that he transported Brown to the City Jail; and (3) that he hit or tased Brown at any time. See id. Thus, Officer Garner both (1) raised a qualified immunity defense, shifting the burden to Brown to negate qualified immunity, and (2) negated Brown's allegations regarding the first element required to overcome a qualified immunity defense, that of establishing a violation of a constitutional right.

The Court's decision in Section II, A, *supra*, to disregard almost all of Brown's proposed summary judgment evidence leaves Brown with only (1) Officer Garner's handwritten police report and (2) Brown's "Declaration that Documents Were Requested" as summary judgment evidence. See Record Document 61-1 at 1 and 8-9. Officer Garner's handwritten police report aligns with his affidavit statements. See id.; see Record Document 57-2. Brown's "Declaration that Documents Were Requested" simply declares that he "did not receive [certain discovery documents from Defendants] in time to review them for policies and procedures that could help in [his] opposition." Record Document 61-1 at 8. This declaration does nothing to contest Officer Garner's affidavit testimony. Therefore, Brown failed to overcome Officer Garner's qualified immunity defense, and Brown's claims against Officer Garner in his individual capacity fail as a matter of law.

### ii. Brown Failed to Overcome Chief Shaw's Qualified Immunity Defense.

A plaintiff may only recover under § 1983 against defendants who were either personally involved in the alleged constitutional violation or whose acts are causally connected to the alleged constitutional violation. Roberts v. City of Shreveport, 397 F.3d 287, 292 (5th Cir. 2005). Though Chief Shaw was the correct person to sue as the chief of the SPD at the time Brown filed the instant action in order to file an official capacity claim (see Section II, C, *supra*), Chief Shaw can only be held liable in his individual capacity if Brown can point to any evidence of Chief Shaw's own wrongful acts or omissions. See Iqbal, 566 U.S. at 677.

Chief Shaw attached an affidavit to his Motion for Summary Judgment. See Record Document 56-4. The affidavit states that Chief Shaw was the Sergeant in Planning and Research with the SPD at the time of Brown's arrest and was the Chief of the SPD at the time he executed the affidavit. See id. The affidavit states that he was not involved in apprehending or arresting Brown, and that he had no physical contact or communication with Brown on July 1, 2010. See id. Even if the Court were to consider Brown's attachments to his Response to the Motions for Summary Judgment or his untimely affidavits, none of these documents contradict Chief Shaw's affidavit testimony. See Record Documents 61, 61-1, 62, and 63. Thus, it is undisputed that Chief Shaw had no personal involvement whatsoever with Brown's arrest.

Because it is undisputed that Chief Shaw was not personally involved in Brown's arrest, the only way Chief Shaw could be held individually liable is through supervisory liability. In a supervisory liability claim, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between

the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Estate of Davis, 406 F.3d at 381.

The Court finds no genuine dispute as to any of these elements as they relate to Chief Shaw. Chief Shaw's affidavit states that "directly prior to his position in planning and research, he held the position of Customer Service Programs Manager and reported directly to Chief Campbell [former chief of the SPD] for approximately four years." Record Document 56-4. Neither of these titles indicate that Chief Shaw had any form of supervisory or training authority over patrol officers like Officer Garner. Additionally, though Brown did respond to Officer Garner's statement of uncontested facts (albeit without doing so in a separate document as required by Local Rule 56.2), Brown did not respond to Chief Shaw's statement of uncontested facts. See Record Document 61. Under Local Rule 56.2, all of Chief Shaw's statements in his statement of uncontested facts, which align with his affidavit testimony, are therefore deemed admitted by Brown. See Record Document 56-2. Thus, Defendants' summary judgment evidence demonstrates that Chief Shaw had no responsibility for supervising or training Brown before Brown's arrest or on the day of the arrest and the alleged beating.

Even if the Court did consider Brown's attachments to his Response to the Motions for Summary Judgment, these attachments do not contradict Chief Shaw's affidavit testimony. See Record Documents 61, 61-1, 62, and 63. Brown does assert that one of the documents attached to his Response, a document that appears to be an internal log of citizen complaints against Officer Garner, demonstrates such a "pattern of excessive force in such a small time frame that Chief [W]illie [s]haw actions (sic) to

leave Officer Garner on patrol to possibly harm more citizens allowed the mental mind state for excessive force during his patrol time (sic)." Record Document 61 at 4; see Record Document 61-1 at 19. He also asserts that "Chief Shaw continually overlooked the 'smoke' until there was 'fire' that culminated in abusive and excessive tactics" against Brown. Record Document 61 at 4.

This argument fails in an individual capacity claim because Chief Shaw had no supervisory or training authority or responsibility over Officer Garner prior to or at the time of Brown's arrest. Though Brown's arguments in his Response attempt to dispute this fact, none of Brown's attached documents contain anything to dispute it, and in any event the Court has disregarded all but two of those documents. See Record Documents 61, 61-1, 62, and 63. As such, Brown cannot demonstrate a genuine dispute as to (1) a "causal link" between Chief Shaw's failure to train or supervise Officer Garner or (2) that Chief Shaw's failure to train or supervise Officer Garner constituted "deliberate indifference." Estate of Davis, 406 F.3d at 381; see Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3rd Cir. 2006) (assertions in legal memoranda cannot demonstrate a genuine dispute of material fact). Brown cannot overcome Chief Shaw's qualified immunity defense absent a showing that Chief Shaw ever violated Brown's rights, and Brown's claims against Chief Shaw individually therefore fail.

### C. Brown's Federal Claims Against Officer Garner and Chief Shaw in their Official Capacities and the City

A suit against a state or municipal officer in his or her official capacity is treated as a suit against the entity itself. See Graham, 473 U.S. at 166. As such, a plaintiff must prove the elements necessary for a Monell municipal liability claim to prevail in an

official capacity suit. See Hafer v. Melo, 502 U.S. 21, 25 (1991). The elements a plaintiff must prove in a Monell claim are: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom. McGregory, 335 Fed. Appx. at 448.

    The evidence attached to the City's Motion for Summary Judgment negates all three of the ways a plaintiff can show the first element of an official policy or custom. See Bryan Cty. Comm'rs, 520 U.S. at 417-19 (Souter, J., dissenting) (listing the three ways a plaintiff may show such a policy or custom). Chief Shaw's affidavit states that (1) he has been a police officer with the City since 1990; (2) he had no personal involvement in the arrest of Brown; (3) based on his knowledge of the policies, practices, and procedures of the SPD, there is no policy to engage in wrongful arrests or the use of excessive force; and (4) officers are instructed and required to refrain from the use of excessive force and are punished when they use excessive force. See Record Document 56-4. Thus, this affidavit shows that there is no policy or custom of the SPD that allows for the use of excessive force, that excessive force is prohibited, and that officers are punished for violating this prohibition. The City therefore presented evidence to negate one of the elements of Brown's § 1983 official capacity claim.

    As was the case with Brown's individual capacity claims, the two pieces of evidence from Brown's Response that the Court will consider in deciding the instant Motions do not demonstrate a genuine dispute of material fact on the official custom or policy element. Officer Garner's handwritten police report and Brown's "Declaration that Documents Were Requested" offer nothing to rebut Chief Shaw's testimony regarding

the official policies of the SPD. See Record Document 61-1 at 1 and 8-9. Thus, Defendants are entitled to judgment as a matter of law on Brown's official capacity claims.

### D. Brown's State Claims Against Officer Garner, Chief Shaw, and the City of Shreveport

Louisiana's qualified immunity doctrine mirrors the federal qualified immunity doctrine. See Moresi, 567 So.2d at 1091-95. As such, the qualified immunity analysis for Brown's state claims against Officer Garner and Chief Shaw is identical to the qualified immunity analysis for Brown's claims under federal law in Section II, B, i and ii, *supra*. Qualified immunity therefore protects Chief Shaw and Officer Garner from Brown's state law claims as well. See Lester v. Caddo Parish, 2016 U.S. Dist. LEXIS 136192 at *19-20, 29-30 (W.D. La. 2016) (similarly dismissing all state law constitutional claims when all federal constitutional claims against defendants in their individual capacities were barred by an immunity defense). As Brown's summary judgment evidence does not demonstrate a genuine dispute of material fact regarding whether Officer Garner or Chief Shaw violated his constitutional rights, there is no act by a city employee upon which Brown can base a claim against the City of Shreveport. Therefore, all state law claims against the City of Shreveport also fail.

### E. Brown's Wrongful Arrest Claims

Brown asserted wrongful arrest claims against all Defendants under both federal and state law. See Record Document 1, at 4, 5. However, the rule from Heck that a plaintiff can only recover for an unconstitutional imprisonment if the conviction for the offense for which he was arrested is somehow invalidated applies in the instant action. 512 U.S. at 486-87. Brown's amended complaint admits that he pleaded *nolo*

*contendere* to the charge of public drunkenness, and that he was subsequently convicted of this offense. See Record Document 28 at ¶ 3.9.1. None of the exhibits Brown submitted to the Court demonstrate that his conviction for public drunkenness has been invalidated. See Record Documents 61, 61-1, 62, and 63. Louisiana follows the Heck rule for wrongful arrest claims under state law. See Restrepo, 556 So.2d at 1363; see Bates, 2012 U.S. Dist. LEXIS 113931 at *18-19. Therefore, Brown is barred from asserting a wrongful arrest claim under either federal or state law.

### F. Brown's Conspiracy Claims

Brown did not address his conspiracy claim in his response to Defendants' Motion for Summary Judgment. See Record Document 61. As such, Brown abandoned this claim. See Culbert v. Cleco Corp., 926 F. Supp. 2d 886, 895 (W.D. La. 2013) (when a plaintiff fails to address a defendant's summary judgment argument on a claim in the plaintiff's opposition, the claim is abandoned). Additionally, because the Court finds that there is no genuine dispute as to any material fact regarding a violation of Brown's constitutional rights by Defendants, there is also no such dispute regarding a conspiracy to violate Brown's constitutional rights. See Farrar v. Bracamondes, 332 F. Supp. 2d 1126, 1131 (N.D. Ill. 2004) (when a plaintiff has not established a deprivation of a federal right, a plaintiff cannot establish a conspiracy to deprive the plaintiff of a federal right). Therefore, Brown's conspiracy claim also fails.

### G. Brown's Claims under Title VII of the Civil Rights Act of 1964

Brown also filed suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* See Record Document 28. These claims are wholly without merit, as this statute regulates equal employment opportunities. Nothing in the amended

complaint, Response to the Motions for Summary Judgment, or documents attached to the Response relates to an employment claim by Brown. See Record Documents 28, 61, and 61-1. Therefore, there is no genuine dispute of material fact regarding Brown's Title VII claim.

### H. Brown's "Declaration that Documents Were Requested"

As mentioned in Section II, B, i, *supra*, Brown attached a "Declaration that Documents Were Requested" as one of his exhibits in his Response to Defendants' Motions for Summary Judgment. See Record Document 61-1 at 8-9. This document declares that Brown "did not receive [certain discovery documents from Defendants] in time to review them for policies and procedures that could help in [his] opposition." Id. at 8. Though Brown never expressly addresses this declaration in his Response, it appears that he seeks to use the declaration to obtain more time to review the documents he received in the discovery process. See Fed. R. Civ. P. 56(d). This request is **DENIED**. The instant action has been pending since 2011. Brown has had ample time to conduct discovery. The Court has afforded Brown every opportunity to pursue his claim, including reinstating the instant action after the death of his attorney and extending the deadline to respond to the instant Motions for Summary Judgment. See Record Documents 11 and 60.

### CONCLUSION

Defendants met their summary judgment burdens by negating at least one essential element of each of Brown's claims or by demonstrating that his claims were barred as a matter of law. Brown failed to demonstrate a genuine dispute of material fact on the challenged elements. As such, Defendants are entitled to judgment as a

matter of law. Defendants' Motions for Summary Judgment (Record Documents 56 and 57) are therefore **GRANTED**. To the extent Brown seeks more time to review discovery materials, that request is **DENIED**. All of Brown's claims are hereby **DISMISSED WITH PREJUDICE**.

A judgment consistent with the terms of the instant Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, on this the 30th day of January, 2017.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE